Luis E. De Soto, Plaintiff and Appellee, *v.* Clínica Industrial, Inc., Defendant and Appellant.

No. 10100.   Argued November 8, 1950.—Decided November 28, 1950.

822

*Víctor Gutiérrez Franqui, Lino J. Saldaña, Luis F. Sánchez Vilella,* and *José Trías Monge,* for appellant. *Guillermo Bauzá* for appellee.

MR. JUSTICE SNYDER delivered the opinion of the Court.

Luis E. De Soto sued Clínica Industrial, Inc. for unpaid wages in the amount of $16,199.56. After a trial on the merits, the district court entered judgment in favor of the plaintiff for $9,362.74, $250 for attorney's fees and costs. The lower court based its judgment on the following:

### "Findings of Fact

"1. That the plaintiff worked for the defendant from November 7, 1935 until April 30, 1942 under a verbal contract to work 6 days a week, 8 hours a day, with the understanding that the plaintiff would be paid at a rate of double the wages he was receiving for the extra time he had to work.

"2. That from November 7, 1935 until December 31, 1937, the plaintiff worked for the defendant for a monthly salary of $60 and from January 1, 1938 until April 30, 1942 for a monthly salary of $83.

"3. That from November 7, 1935 until April 30, 1942 the plaintiff worked for the defendant a total of 16 hours daily seven days a week without receiving any pay for the extra hours worked (fact accepted by the defendant).

### Conclusions of Law

"1. From the pleadings, the presentation of the case by the attorneys during the hearing and the testimony adduced by the parties, the intention of the parties is clear that the contract of employment in this case is one to be decided under the provisions of Act No. 49 of August 7, 1935 . . .

"2. (This finding consists of a quotation of § 1 of Act No. 49.)

"3. When one or more of the provisions of an ordinary contract are regulated by statute, that is, are involved in the public order, the provisions of the statute form part of the contract celebrated by the parties.

"4. Section 1 of Act No. 49 of August 7, 1935 has been interpreted in Puerto Rico to the effect that if an employee works more than eight hours in each natural day, the extra hours

must be paid for at double pay for the ninth hours and ordinary pay for the hours in excess of nine in accordance with the salary the employee is receiving.

"5. An employee who works sixteen hours daily for $60 monthly, the salary covers only the eight regular hours. *Vélez* v. *Royal Bank*, 65 P.R.R. 912 and the rest of the hours must be paid for at the rate of double pay for the ninth hour and ordinary pay for the time worked in excess of the ninth hour. *Cardona* v. *District Court*, 62 P.R.R. 59; *Díaz* v. *Sucrs. de F. Ortega & Co.*, 63 P.R.R. 239.

. "6. If an employee, whose monthly contract with the employer is for 8 hours daily for 6 days a week, works 7 days a week, the seventh day must be paid for as extra work, at the rate of ordinary pay for the first eight hours, double pay for the ninth hour and ordinary pay for the rest of the hours worked in excess of nine;"[1]

On appeal, the defendant argues that the lower court committed manifest error in its first and third findings of fact. It also contends that "the third, fourth and fifth conclusions of law are erroneous and establish legal tests whose application to the controversies of fact and law involved in the case justify reversal of the judgment of the lower court." [2]

██ We begin by examining the last contention of the defendant. The conclusions of law of the lower court require little discussion. We have held time and again that except for the ninth hour Act No. 49 plays no role whatsoever in these cases. Rather the matter is exclusively one of contract between the parties. Consequently, if the understanding of the parties is that a stipulated monthly salary covers all the time worked, the plaintiff receives nothing additional for the time worked in excess of nine hours. Under these circumstances, the only effect of Act No. 49

---

[1] The seventh conclusion of law involved the alleged method required to calculate extra pay. It is unnecessary for our purposes to examine this conclusion of law.

[2] The defendant also assigns as error the 7th conclusion of law. As already indicated, the result we reach makes it unnecessary for us to consider that error.

is to require payment of additional pay for the ninth hour at a rate calculated by dividing the amount received by the total number of hours worked.[3]

The lower court was therefore wrong in stating in its fourth conclusion of law that § 1 of Act No. 49 requires payment of ordinary pay for time worked beyond nine hours. It was likewise erroneous in holding in its fifth conclusion that as a matter of law the salary of an employee who works 16 hours a day for $60 monthly covers only 8 hours a day and that he is entitled to additional compensation at the ordinary rate for work beyond the ninth hour. The cases it cites for these propositions hold exactly the opposite.

As will be hereafter noted, the important thing for our purposes is that the lower court thought Act No. 49 required ordinary pay for work in excess of nine hours a day irrespective of contract. The district court discarded its own alleged finding of fact that the *contract* of the parties provided for double pay for work beyond nine hours; instead, it awarded only ordinary pay for that time, despite the alleged contract, on the theory that *Act No. 49* required such pay as a matter of legislative fiat. That erroneous conclusion of law was obviously based on the alleged requirement of Act No. 49, not on any contract.

Ordinarily, errors in conclusions of law would not require reversal. Provided the findings of fact were supported by the evidence, we would simply discard the erroneous conclusions of law and apply the correct conclusions to the facts as found by the lower court. However, the defendant argues, that we cannot dispose of the instant case in this manner. In the first place, it contends that the lower court committed manifest error in its findings of fact, requiring judgment for

---

[3] *Cardona* v. *District Court*, 62 P.R.R. 59; *Muñoz* v. *District Court*, 63 P.R.R. 226; *Alcalá* v. *Ponce Star Line*, 63 P.R.R. 825; *Torres* v. *González*, 63 P.R.R. 925; *Sucn. J. Serrallés* v. *District Court*, 64 P.R.R. 474; *Avellanet* v. *Porto Rican Express Co.*, 64 P.R.R. 660, 664; *Montalvo* v. *Paul Smith Const. Co.*, 64 P.R.R. 723; *García* v. *District Court*, 69 P.R.R. 142; *Chabrán* v. *Bull Insular Line*, 69 P.R.R. 250, 277.

the defendant. In the second place, the defendant argues that the lower court was so misled by its erroneous view of the law (that liability flowed from Act No. 49 irrespective of contract) that it did not focus its attention on the terms of the contract, which was the only important issue before it. Instead, according to the defendant, the lower court merely found in a *pro forma* fashion that a contract—which it regarded as unnecessary and which it did not follow in its conclusions of law—existed. The defendant argues that this erroneous approach of the lower court plus the doubtful nature of the testimony on which the findings of fact are based entitle it to a new trial.

In examining these two contentions of the defendant, we turn first to its argument that the lower court committed manifest error in its first finding of fact. The only evidence in the record on this point is the testimony of the plaintiff himself and Dr. Franceschi. The defendant offered no testimony whatsoever as to this or any other issue.

*Luis E. De Soto* testified that he began to work for Dr. Guzmán, his cousin, in 1932 when the latter opened his clinic; that at first the doctor did not have any money to pay his employees; that from November 7, 1935 he worked from 7 a. m. on an average to 2 o'clock in the morning; that his contract with Dr. Guzmán was that he would be paid double time for the hours he worked in excess of 8 hours; that in 1935 his salary was $60 monthly; that on January 1, 1938 it was increased to $83 monthly; that he worked for the latter salary until April 30, 1942; that he was never paid for the hours he worked in excess of 8 hours for "certain reasons"; that his work was general work, X-rays, laboratory, painting, carpentering, discipline, treating patients, making plaster casts; that he was practically the clinic, and that was why Dr. Guzmán did not want him to have a cent of his money in order to be able to leave; that he did not leave because employment could not be found at any price.

On cross-examination, De Soto testified that in 1932 there was no agreement as to double pay; that at first he did not live in the clinic, but later in 1935 he lived there; that in 1932 the doctor paid him the agreed salary, but not afterwards; that there were two contracts: one in 1932 and one later when they agreed on double time; that from 1935 to 1938 he did not object when he received his monthly check for $60 that it was too little money; that he is the greatest expert in Puerto Rico on X-rays; that in spite of his qualifications and in spite of the fact that he was not being paid what had been agreed on, he continued working in the clinic because he had no other "escape"; that he was the best expert in Puerto Rico but there was no job at any price; that there was an "escape" in the war period but by that time it did not suit him to leave and he left when he was called by the Army; that from 1935 to 1943 he did not write the doctor making any claim; that when he began to work in 1932, he worked 8 hours a day, 6 days a week, for $20 a month; that his claim for extra hours came when Dr. Franceschi offered to pay him double, triple or whatever was necessary if he would work for the latter on X-rays in his office below the clinic during extra hours; that Dr. Guzmán told Dr. Franceschi, in the presence of De Soto, that "I need him, imperatively, and if you are disposed to pay him triple for the work he does, I promise to pay him double for all the time he works after 8 hours, including Sundays and holidays"; that he was going to work for Dr. Franceschi after work in the clinic ended; that work in the clinic never ended; that he worked without fixed hours.

On redirect examination, De Soto testified that his hours in the clinic were 8 hours but he really worked 16 to 18 hours; that in 1932 his wages were to be in relation to the profits of the business because he was the one who gave Dr. Guzmán the opportunity of starting the business and establishing the clinic; that the agreement for extra time was

in 1935; that at the beginning it was agreed to pay him in accordance with the profits and when he was not paid in accordance with the profits, it was agreed to pay him for extra hours.

On re-cross-examination, De Soto testified that Dr. Franceschi tried to obtain his services in July, 1935 after he saw an X-ray the witness took at the clinic; that he dated his claim from November 6, 1935 because his attorneys told him that was the effective date of the law; that the doctor agreed to pay double time before that date; that if he had left the clinic, he would have obtained a job, but Dr. Guzmán as his cousin always told everybody, "when I leave the clinic Luis will remain"; that when he first began to work for Dr. Guzmán, if the latter had told him he was going to make $100, he would not have accepted the position; that $100 is not half of what he was making in the United States; that he is not any old employee; that he has studied at Columbia University; that he came here not to make $20 but because his mother died and his father was left alone.

Dr. Francisco Franceschi Caballero, testifying with reference to the conversation in July, 1935, stated that after De Soto had taken an X-ray of his hand, he made him a proposition to work with him; that in the presence of De Soto, the witness asked Dr. Guzmán if De Soto could work for him after hours; that Dr. Guzmán stated he needed him all the time and would not permit him to work for Dr. Franceschi; that "whatever the latter could pay him for the extra time, he was disposed to give him."

The defendant characterizes the testimony of De Soto as "confusing, contradictory and extremely improbable and incredible". It therefore asks us to discard it on the issue of the existence and terms of the contract as found by the lower court. If we were to take that course, we would agree with the defendant that there was no other evidence in the record to sustain the finding of fact that the parties con-

tracted for double pay after 8 hours and 6 days a week. That is because the testimony of Dr. Franceschi, standing alone, does not show any definite or specific contract for such double pay.  On the contrary, as the defendant points out, the increase from $20 to $60 in 1935 in the plaintiff's monthly pay would be consistent with Dr. Franceschi's testimony.

The defendant argues this point extensively, citing many phases of De Soto's testimony in support of its argument. And if we accept *arguendo* for the moment the third finding of fact that for 6½ years the plaintiff—who on his own statement was and is the most skilled X-ray expert in Puerto Rico—worked *normally* and *regularly* 16 hours a day, 365 days a year, it cannot be denied that a *contract* providing for double pay for the services for the last 8 hours would be highly unusual.  As we pointed out in *Cardona v. District Court, supra*, at p. 72, "double pay is . . . not, strictly speaking, compensation as such for the services rendered, as fixed by the market rate for such services.  Indeed, a fatigued employee, subject to a higher accident risk, is, objectively speaking, worth perhaps less rather than double the ordinary rate of pay."  Stated another way, an employer might well make a contract for double pay for work beyond 8 hours where such overtime occurred occasionally, or only for a short time.  *Cf. García v. District Court*, 69 P.R.R. 142.  But a *contract*, as distinguished from a requirement of law, for double pay beyond eight hours, where as here the *normal* work day was allegedly *sixteen* hours for 6½ years, seems improbable.  Such a contract could, of course, exist; but the burden on the party attempting to prove it is heavy.

On the other hand, wherever we have set aside findings of fact involving such contracts, the record (1) either has been completely devoid of any evidence of a *contract* to pay the plaintiff double time for work in excess of eight hours, (2) or has contained conflicting evidence of an im-

pressive and decisive nature offered by the defendant.[4] Neither of these two situations exists here. De Soto testified that he had such a verbal contract. And the defendant chose to offer no testimony whatsoever. Despite these considerations, the defendant urges us to reject the testimony of De Soto with reference to the contract as incredible under all the circumstances. However, we need not face this question, as we are of the view, for reasons presently to be noted, that a new trial is required. We therefore need not rule on whether the lower court committed manifest error in finding as a fact that the parties entered a verbal contract for double pay for work in excess of 8 hours.

■ We turn next to the second contention of the defendant with reference to the first finding of fact; namely, that the lower court entered it in a purely mechanical fashion because it was mistakenly convinced that the case was controlled by Act No. 49 rather than by the contract of the parties. After examining the testimony, the findings of fact and conclusions of law, we are convinced that the district court was so misled by its erroneous construction of Act No. 49 that it did not base its judgment on a finding of fact that the parties contracted for double pay for work in excess of 8 hours. As already noted, the contract which the court apparently found existed would have required double, not ordinary, pay for the 10th to the 16th hour. Yet the court in its conclusions of law granted only ordinary pay therefor, clearly demonstrating that it was awarding pay according to a mistaken notion of law and not pursuant to a contract. Indeed, no reasonable person would make a contract —as distinguished from the faulty provisions of Act No. 49 described in detail in the *Cardona* case—providing for a normal 16 hour day for which he would receive *double* pay for

---

[4] See *Chabrán* v. *Bull Insular Line, supra; Vélez* v. *Royal Bank,* 65 P.R.R. 912; *Torres* v. *González,* 63 P.R.R. 925; *Heirs of Valdivieso* v. *District Court,* 64 P.R.R. 470; *Sucn. J. Serrallés* v. *District Court, supra; Avellanet* v. *Porto Rican Express Co., supra; Muñoz* v. *District Court, supra.*

the 9th hour but only ordinary pay from the 10th to the 16th hour. Obviously, the judgment was predicated on the alleged provisions of Act No. 49, and not on a contract. If the lower court had really believed such a contract existed, it would have granted judgment pursuant to the contract for double pay for all work after 8 hours.[5]

We are constrained to the view that the lower court did not deliberately find as a fact that a contract as described by the plaintiff existed. On the contrary, it focused its attention entirely on an erroneous interpretation of Act No. 49. And, regarding the first finding of fact as unnecessary for decision of this case, it entered that finding in a purely mechanical and *pro forma* fashion.

In spite of the foregoing, if the record contained evidence which supported the first finding of fact in a substantial way, we would follow the ordinary rule already noted of applying the correct conclusions of law to the findings of fact as entered by the lower court. The difficulty here is two-fold. In the first place, here we do not have findings of fact in the usual sense. As we have already made clear, the first finding of fact was not made by the lower court after carefully and critically weighing the evidence. In the second place, for reasons already noted, the only testimony on which the first finding could be based strains our credulity. Under these peculiar circumstances, we think it is preferable, in the interests of justice to have a new trial where the lower court will be required (1) to put, aside its erroneous theory that De Soto is entitled to judgment for the amount he claims as a matter of law under Act No. 49 and (2) to find categorically whether or not it believes the testimony of De Soto as to the existence and terms of the alleged contract under all the circumstances of this case. *Cf. International*

---

[5] The plaintiff himself seemed to think that his claim for work beyond the ninth hour stemmed from Act No. 49 and not from a contract. He dates his claim, and judgment was awarded, from November 7, 1935, the effective date of Act No. 49. But if there were a contract as claimed by the plaintiff, it was made in July, 1935.

*General Electric Co.* v. *Colón*, 62 P.R.R. 550; *Calderón* v. *Cacho*, 62 P.R.R. 593; *Acosta* v. *Crespo et al.*, 70 P.R.R. 223.

It remains only to consider the assignment that the lower court committed manifest error in its third finding of fact that from November 7, 1935 to April 30, 1942 the plaintiff worked 16 hours a day 7 days a week for the defendant.

The defendant argues (1) that the testimony of the plaintiff as to the average amount of time he worked was not sufficiently definite and specific to meet the burden of proof on this point; (2) that it was physically impossible for the plaintiff to have worked an average of 16 to 19 hours a day 365 days a year for 6½ years; and (3) that the district court based the third finding of fact, not on the testimony, but on an erroneous belief that the defendant had conceded this fact. On the latter point, the position of the defendant is that at the trial it conceded that the plaintiff worked 16 hours daily solely for the purpose of stipulating that it was willing to pay the plaintiff the amount it admittedly owed him *under Act No. 49* for all the ninth hours he worked. For that purpose, it was of course in the interest of the defendant to concede that the plaintiff worked 16 hours daily rather than a lesser number of hours, provided the court agreed with its theory that the contract between the parties was for a monthly salary to cover all the hours worked. That is because the hourly rate of additional pay for the ninth hour would then be considerably less than if the plaintiff pursuant to such an agreement had worked only 9 or 10 hours daily. See *Chabrán* v. *Bull Insular Line, supra,* p. 280; *Avellanet* v. *Porto Rican Express Co., supra,* p. 680.

In view of the fact that a new trial will be required, we prefer not to pass on this assignment. Under all the circumstances, we think it best that the parties start anew and be required to prove all phases of the case.

For the reasons stated, the judgment of the district court will be reversed and the case remanded for a new trial.

Mr. Justice Negrón Fernández did not participate herein.